IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                 *Plaintiff,*

v.

ROGER GOLUBSKI,

                 *Defendant.*

Case No. 22-40055-TC &
22-40086-TC

**RESPONSE IN OPPOSITION TO OBJECTIONS AND MOTIONS TO QUASH**

On January 27, 2023, Defendant Roger Golubski filed his Unopposed Motion for Subpoena and Protective Order.   The stated objective of the motion was to grant the attorneys currently representing Golubski in pending criminal actions identical access to materials presently in the possession and control of the attorneys who represented Golubski in D. Kan. Case No. 18-cv-02545.   The requested relief would not alter Golubski's access to the materials and information or the public's access to the materials and information.   It would simply put Golubski's criminal defense counsel in the shoes of his civil defense counsel.   And that was the practical effect of the subpoenas and protective orders issued at Golubski's request.

Lamonte McIntyre, Rose Lee McIntyre, Ophelia Williams, Saundra Newsom, Niko Quinn, Michelle Houcks, Richelle Miller, Jermeka Hobbs, representatives of the Estate of John Keith Calvin and members of the Calvin family, and unnamed John & Jane Does ("Movants") now ask this Court to quash the subpoenas, claiming they

invade Movants' privacy and constitute an abuse of the criminal discovery process. Movants casually dismiss the significant fact that Golubski was a party to Case No. 18-cv-02545 and conspicuously ignore the protective orders entered in Golubski's criminal cases.   As a result, their motions present a distorted perspective of the issue before the Court.

Giving fair consideration to all of the facts, as well as Golubski's right to information bearing on the criminal charges pending against him, the true question at hand is whether it is unreasonable or oppressive to grant Golubski's criminal defense counsel equal access to materials provided to his civil defense counsel while also imposing commensurate restrictions upon its use and disclosure.   Because it is neither unreasonable nor oppressive, the motions to quash should be denied.

## FACTS

The case opening document provided in discovery for Case No. 22-cr-40055 explains:

> In October 2014, Attorney Cheryl Pilate (Pilate) reported color of law allegations against former KCK Captain and Detective Golubski. Pilate discovered the allegations while representing at least three clients in cases affiliated with KCK Police Department.

Golubski_000002.

Lamonte McIntyre was one of the clients for whom Pilate was collecting information in 2014.   McIntyre was pursuing relief from incarceration on murder convictions entered in the 1990s.   In order to demonstrate McIntyre's innocence, his legal team sought information on Golubski, who investigated the murders.

2

Some of the information Lamonte McIntyre's team collected was used in his state habeas action (*McIntyre v. State of Kansas*, Wyandotte County Case No. 2016-CV-508), and some of it was used in a subsequent civil action Lamonte and Rose Lee McIntyre filed against Golubski and the Wyandotte County Unified Government (*McIntyre et al. v. Wyandotte County Unified Government, et al.*, D. Kan. Case No. 18-cv-02545).

The Complaint filed in D. Kan. Case No. 18-cv-02545 claimed that Golubski caused Lamonte McIntyre to be convicted for two homicides he did not commit in retaliation for Rose Lee McIntyre's refusal to partake in a romantic relationship with him after he allegedly sexually assaulted her. Doc. 1, ¶ 2-4.  But the McIntyres' allegations were not limited to those distinct acts.

Seeking to attach liability to Golubski's former employer, the McIntyres alleged that Golubski engaged in a pattern of similar activity that was well known throughout the Kansas City Police Department and the community:

> For decades, the Kansas City Police Department (KCKPD) permitted Detective Roger Golubski to terrorize an entire community—by using his badge to extort sexual favors from poor black women . . . Golubski forced his victims to submit to sexual acts, through physical force or with threats of arrest or harm to them or their loved ones. He also manipulated his victims by promising favors. . .

Case No. 18-cv-02545, Doc. 1, ¶ 1.  The McIntyres' allegations about extorting sexual favors and forcing victims to submit to sexual acts are not just similar to those brought by the government in Case No. 22-cr-40055, they are identical.  This is clear in the McIntyres' response in opposition to summary judgment, where the McIntyres

relied on S.K.'s and O.W.'s deposition testimony alleging sexual abuse. *See* Case No. 18-cv-02545, Doc. 624, ¶¶ 443, 566-568, 574-576; *compare* Case No. 22-cr-40055, Doc. 1 & Doc. 10, at pp. 3-9.

The McIntyres also alleged that "Golubski had connections to, and was involved in, the KCKPD drug trade at the time of the murders and was particularly close with Cecil Brooks" (one of Golubski's alleged co-conspirators for the charges brought by the government in D. Kan. Case No. 22-cr-40086). Case No. 18-cv-02545, Doc. 624, at p. 248; *see also* ¶¶ 551-557.   The McIntyres theorized that the true perpetrator of the murders for which Lamonte was convicted was a member of Brooks's gang and that Golubski was protecting Brooks by framing Lamonte. Case No. 18-cv-02545, Doc. 624, at pp. 248-249.   In support of their position, the McIntyres cited witness accounts claiming knowledge of a criminal association between Brooks and Golubski. Case No. 18-cv-02545, Doc. 624, ¶¶ 551-557.

The McIntyres inquire whether Golubski's criminal defense counsel have reviewed publicly available filings from Case No. 18-cv-02545.   We have.   And they reveal a significant overlap in witnesses interviewed by the FBI for Case Nos. 22-cr-40055 & 22-cr-40068 (including the named Movants).

This overlap is in part due to the McIntyres' attorney actively pursuing criminal charges against Golubski.   During the pendency of Case No. 18-cv-02545, Pilate routinely provided FBI agents with information regarding Golubski. According to reports produced to date, she met with or spoke to agents more than 25 times while Case No. 18-cv-02545 was pending.   During that time period, Pilate

facilitated law enforcement interviews with witnesses—including S.K., O.W., and "other victims" identified in the government's pretrial detention memorandum filed as Document 10 in Case No. 22-cr-40055.    Pilate also suggested that the FBI contact specific individuals who may now prove to be critical witnesses in Case No. 22-cr-40068.

## ARGUMENTS & AUTHORITIES

Movants' contention that Case No. 18-cv-02545 is "unrelated" to the criminal actions pending against Golubski is false.    In truth, the cases are inextricably intertwined and the discovery produced in Case No. 18-cv-02545 is essential to preparing Golubski's defense.    The subpoenas were properly granted and should not be quashed.

## I.    Golubski is entitled to his full civil case file, including all discovery.

Golubski was a defendant in Case No. 18-cv-02545.    As a party to that action, Golubski is entitled to all discovery from Case No. 18-cv-02545. *Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus*, 824 S.W.2d 92, 98 (1992) (when an attorney is hired to represent a client in defending a claim, "the client at a minimum must be entitled to those papers required by law to be filed in an appropriate tribunal and those related papers essential or necessary to make the former papers meaningful," such as "pleadings, *depositions, interrogatories and the like*") (emphasis added).

"This duty is created by the ethical imperatives of the practice of law, and it may even have a counterpart in a legal duty." *Id; see also* Kan. R. Prof. C. 1.16(d)

("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled"); KBA Legal Ethics Opinion No. 92-5 (July 30, 1992) ("'Client's property' includes . . . deposition or other discovery documents pertinent to the case for which client was billed and has paid for (expert witness opinions, etc.) . . . Such documents, being 'client property' must be returned unconditionally").

Movants specifically object to Golubski obtaining documents marked "confidential," claiming this would harmfully invade their privacy.  But they ignore that Golubski is and has always been entitled to those documents—even according to the terms of the original protective order entered in Case No. 18-cv-02545. *See* Protective Order, Case No. 18-cv-02545, Doc. 124, ¶6(b)(1) ("Who May View Designated Confidential Information . . . The parties to this litigation, including any employees, agents, and representatives of the parties").  There is no invasion of Movants' privacy by Golubski seeing again what he has already seen before.

The McIntyres do not claim to have marked any of their own documents "attorneys eyes only."  They offer that they primarily reserved the "attorneys eyes only" designation for circumstances when they produced information pertaining to their (civilian) witnesses.  That being the case, the "attorneys eyes only" designations were effectively voided by the Amendment to Protective Order's declaration that: "Notwithstanding any prior designation as 'Attorney Eyes Only,' non-public information about civilian witnesses may be disclosed to third parties."

Case No. 18-cv-02545, Doc. 735, ¶4.   To the extent the designation remains, its protection carries over to Golubski's criminal defense counsel via the protective order entered in this case.

In sum: Golubski's access to the subpoenaed materials will remain unchanged.

## II. No harm will result from Golubski's criminal defense counsel obtaining equal access to the subpoenaed materials as already granted to his civil defense counsel.

If the subpoenas are upheld, Golubski's criminal defense team will be granted access to materials already provided to Golubski's civil defense team under the same terms and restrictions that apply to Golubski's civil defense team.   With respect to items marked "confidential," the effect of the Court's orders is to add Golubski's criminal defense team to this lengthy list of individuals who already have or had access those materials:

(1)   The parties to D. Kan. Case No. 18-cv-02545, including any employees, agents, and representatives of the parties,

(2)   Counsel for the parties and employees and agents of counsel;

(3)   The court and court personnel, including any special master appointed by the court, and members of the jury;

(4)   Court reporters, recorders, and videographers engaged for depositions;

(5)   Any mediator appointed by the court or jointly selected by the parties;

(6)   Any expert witness, outside consultant, or investigator;

(7)   Any potential, anticipated, or actual fact witness and his order her counsel to the extent it would assist in recalling, relating, or explaining facts or in testifying;

(8)   The author or recipient of the document;

(9)   Independent providers or document reproduction, electronic discovery, or other litigation services; and

(10)  Other persons upon the consent of the producing party.

Protective Order, Case No. 18cv02545, Doc. 124, ¶6(b).

Like Golubski's civil defense counsel (and everyone else on this list), Golubski's criminal defense counsel would have access to this material without redaction.[1] Pursuant to the same requirements imposed on Golubski's civil defense counsel, Golubski's criminal defense counsel would also be able to view materials marked "attorneys eyes only" (again, to the extent that designation remains following entry of the Amendment to Protective Order).

It is far from clear what harm Movants will suffer by virtue of the Court granting Golubski's criminal defense team identical access to Movants' information as was granted to Golubski's civil defense team.   Counsel's use and disclosure of the materials is not only constrained by protective orders adopting the restrictions imposed in the civil case; it is also governed by our duties as officers of the court.

Golubski's request is nothing like the requests made by news organizations who wanted information from Case No. 18-cv-02545 for the express purpose of widely disseminating it to the public.   Golubski is facing criminal indictments based on allegations addressed and collected in a civil action to which he was a party, and he needs his criminal defense attorneys to have that information when preparing his

---

[1] It should be noted that no one (including Movants) has affirmatively asserted that Movants' full social security numbers, financial account numbers, names of minor children, dates of birth, or home addresses actually appear in the subpoenaed materials. Such information was not specifically addressed by parties or intervenors in when media outlets sought information in Case No. 18-cv-02545. Instead, they were raised for the first time in Judge Vratil's order holding that the original protective order should be amended—an apparent prophylactic against widespread dissemination of any such information to the extent it might exist. Order, Case No. 18-cv-02545, Dkt. 726 (text entry only).

defense.   There being no special danger in Golubski's criminal defense counsel obtaining the subpoenaed materials, his request does not warrant opposition akin to a request from the media.   It should be approved in the interest of justice.

### III.   The subpoenas are not unreasonable or oppressive; they are necessary to preserve Golubski's Sixth Amendment rights and entirely appropriate under the circumstances.

This is not a typical subpoena scenario.   The persons to whom the subpoenas are directed are more than willing to provide the materials at issue.   Indeed, they have an ethical obligation to do so.   They do not need to be compelled.   What they need is permission—specific judicial guidance acknowledging and addressing the logistical obstacle of orders entered in Case No. 18cv02545.   That is and always has been the function of the subpoenas and protective orders Golubski requested.   The Court could have provided its directives via any form of judicial order.[2]   A subpoena simply seemed like the most logical procedural vehicle.   In this context, it makes no sense to apply the *Nixon* test as the Movants propose.

But if the Court does consider the *Nixon* test, it should consider that the *Nixon* court did not apply this standard to a defense subpoena directed to a non-party, and it expressly acknowledged the possibility that certain scenarios might call for more

---

[2] Movants claim Golubski and counsel should have addressed their request for the *McIntyre* case discovery to Judge Vratil through filings in Case No. 18-cv-02545. They cite no authority to support this position.   There is authority to the contrary. Specifically, in *Jenkins v. Weinshienk*, the United States Court of Appeals for the Tenth Circuit held that the judge presiding over the matter for which a client's file is sought has the power to decide whether to require the attorney who holds that file to relinquish it. 670 F.2d 915, 919 (1982).

relaxed standards. *See United State v. Nixon*, 418 U.S. 683, n. 12 (1974).   This is one such scenario.

An attempt to apply the *Nixon* test to a defense subpoena was recently rejected in *United States v. Smith*, 2020 WL 4934990 (N.D. Ill. 2020).   Noting that "even *Nixon* did not require absolute certainty on admissibility or absolute precision in specificity," the Honorable Edmond E. Chang refused to quash a defendant's subpoena for failing to demonstrate that the items requested would be admissible at trial:

> So the Court rejects a bright-line admissibility requirement for the subpoena issued to the CFTC in this case. Indeed, even *Nixon* did not require absolute certainty on admissibility or absolute precision in specificity. The opinion characterized the admissibility elements as "a sufficient preliminary showing that each of the subpoenaed tapes contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700 (emphasis added). This makes sense; it is not as if a finding of a subpoena's propriety would automatically result in the allowance of the evidence at trial. On specificity, here, too, absolute precision is not required, as *Nixon* recognized in saying: "Of course, the contents of the subpoenaed tapes could not at that stage be described fully by the Special Prosecutor," and again only requiring a "sufficient likelihood" that the tapes contained relevant conversations. Id.

*Id.* at *3.

To illustrate his point, Chang offered an example of a standard prosecution request for a Rule 17 subpoena:

> Consider this example, with the shoe on the other foot: the prosecution routinely invokes Rule 17 to subpoena all non-privileged recordings of jail-phone conversations of a detained defendant. Yet a strict admissibility requirement would render those subpoenas invalid, because it generally cannot be known that the recordings will be admissible before receiving and reviewing them.

10

*Id.* Such requests are routinely granted—even though the government does not know what it will find or whether it will be useful at trial or in preparing for trial. This is not considered a "fishing expedition" even though some, if not all, of the recordings will prove to be irrelevant.

Chang noted that the option, under Rule 17(c)(2) to quash "unreasonable" subpoenas, guards against fishing expeditions. *Id.* at *4.   According to Chang: "The key is weighing the likelihood that the subpoena will uncover relevant evidence and the potential probative force of that evidence, against the burdens on complying." *Id.*

Here, the subpoenas will undoubtedly uncover evidence relevant to Golubski's defense and the impact on Movants is marginal—comparable to adding attorneys to Golubski's civil defense team.   The balance weighs strongly in Golubski's favor.

In *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008), the Honorable Shira A. Scheindlin offered a thorough and thoughtful decision regarding her refusal to apply the *Nixon* test to a defendant's request for a Rule 17(c) subpoena.   Scheindlin discussed the imbalance of informational access between the government and a defendant and how that imbalance puts defendants—particularly innocent ones—at a disadvantage. *Id.* at 60-61.   She also noted that the Advisory Committee Note for Rule 17(c) states that "[t]his rule is substantially the same as rule 45(b) of the Federal Rules of Civil Procedure." *Id.* at 62.   But her decision was ultimately driven by a criminal defendant's Sixth Amendment right to "put before a jury evidence that might influence the determination of guilt." *Id.* at 65 (quoting *Pennsylvania v. Ritchie*, 480

U.S. 39, 56 (1987)).   Observing that "a defendant must have the ability to obtain that evidence" in order to effect that right, Scheindlin opined that "[d]etermining whether a defendant's subpoena should be quashed thus requires an assessment of the extent to which the subpoena is necessary to permit the defendant to raise a defense." *Id.*

Further, Scheindlin noted, "Rule 17(c) states only that a court may quash a subpoena 'if compliance would be unreasonable or oppressive.' The judicial gloss that the material sought must be relevant, admissible, and specific applies where the government issues a subpoena or where a defendant issues a subpoena to the government. *Nixon* makes clear that this standard also applies where the government subpoenas a non-party." *Id.* at 66.   But *Nixon* did not make clear that it applies when a defendant subpoenas a third party.   And, according to Scheindlin, the *Nixon* standard was not appropriate for request before her—where the defendant sought recordings of all calls made by cooperating witnesses, believing they might contain impeachment evidence. *Id.*   Noting that the defendant had "an articulable suspicion that the documents may be material to his defense" (*i.e.,* the request was not unreasonable), Scheindlin would not deny the subpoena unless it was "unduly oppressive for the producing party to respond." *Id.*

Both Chang and Scheindlin focused on the language of Rule 17(c).   It provides two bases for quashing a subpoena: when compliance would be (1) unreasonable or (2) oppressive.   So we ask: Is it unreasonable or oppressive to grant Golubski's criminal defense counsel equal access to discovery materials already provided to his civil defense counsel while also imposing comparable restrictions upon its use and

disclosure, considering that Golubski is already entitled to those materials and has more than an articulable suspicion that the items are material to his defense?

The answer is no.   Golubski has constitutional rights to present a defense, to confront the witnesses against him, to effective assistance of counsel, and to compulsory process.   It is not unreasonable—nor is it "fishing"—to authorize Golubski's counsel to access to materials and information to which Golubski is legally entitled.   And it is not oppressive to authorize counsel's full access to unredacted materials when all such materials (which have already been disclosed to the numerous legal teams involved in the McIntyres' civil lawsuit) will remain subject to protective orders granting equivalent protections against use and disclosure as applied in the McIntyres' civil lawsuit.

## IV.   The notice argument is moot.

Lastly, Williams, Newsom, Quinn, Houcks, Miller, Hobbs, Calvin, and Doe ("Objectors") object that they did not receive prior notice pursuant to Fed. R. Crim. P. 17(c)(3), which states:

> **Subpoena for Personal or Confidential Information About a Victim.**
> After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

Assuming, *arguendo*, Objectors are "victims" under this provision, the materials pertaining to them have already been deemed non-confidential and available for

dissemination to any person for any purpose.   Specifically, the Amendment to Protective Order filed in Case No. 18cv02545 states:

> **2. Definition of Confidential Information.** As used in the Protective Order, "Confidential Information" shall not include:
> (a) Information about civilian witnesses;
> …
> **3. Information Which is Not Defined as Confidential.** Information which is not defined as Confidential Information may be disclosed to any person and used for any purpose.
> **4. Attorney Eyes Only Designation.** Notwithstanding any prior designation as "Attorneys Eyes only," non-public information about civilian witnesses may be disclosed to third parties.

Case No. 18cv02545, Doc. 735.   Objectors, who were "civilian witnesses" in Case No. 18cv02545, were not entitled to notice pursuant to Fed. R. Crim. P. 17(c)(3).

However, as Objectors are exercising the remedy contemplated by 17(c)(3) by moving to quash, this is a moot point.

## CONCLUSION

Because Golubski was a party to Case No. 18-cv-02545 and is entitled to the discovery from that case, the primary effect of an order quashing the subpoenas would be delay.   Such an order would require Golubski's criminal defense counsel to wait for his civil defense counsel and staff to comb the materials for information potentially subject to redaction before handing it over.

The time and expense required to undertake this review—and resultant delay in the preparation of Golubski's defense—are extraordinary compared to the benefit Movants would receive: preventing Golubski's criminal defense attorneys from viewing the same information already in the hands of his civil defense attorneys,

although Golubski's criminal defense counsel are officers of the Court who have been ordered to protect all subpoenaed information according to the same restrictions imposed on his civil defense attorneys.

The motion to quash should be denied.

Respectfully submitted,

By:      s/ Christopher M. Joseph
Christopher M. Joseph, #19778
Carrie E. Parker, #24988
Joseph, Hollander & Craft LLC
1508 S.W. Topeka Blvd.
Topeka, Kansas 66612
(785) 234-3272
(785) 234-3610 fax
cjoseph@josephhollander.com
cparker@josephhollander.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

s/ Christopher M. Joseph
Christopher M. Joseph